Filed 10/2/15  In re D.J. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re D.J., a Person Coming Under the Juvenile Court Law. | B261481 (Los Angeles County Super. Ct. No. CK96620) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. BRITTANY K., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Commissioner.  Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

Brittany K. (mother) appeals the juvenile court's denial, without a hearing, of her Welfare and Institutions Code[1] section 388 petition, by which mother sought to regain custody of her young son D.J., or alternatively, to reside with him in his caretaker's home and develop a plan to transition the child to mother's care. The juvenile court determined that mother had failed to make a prima facie showing of changed circumstances, or that granting the petition would promote D.J.'s best interests. We concur in that assessment, and so affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

Mother gave birth to D.J. in July 2012, when she herself was a dependent of the juvenile court. D.J.'s father, Derick J. (father), had also been a dependent of the court as a child.

At three months of age, D.J. suffered severe and disabling injuries as the result of physical abuse while in his parents' care. The factual circumstances of the dependency action up until the time of the disposition hearing may be found in this court's unpublished opinion. (*DCFS v. B.K.* (Sept. 2, 2014, B251615) [nonpub. opin.].) In summary, three-month old D.J. was diagnosed with acute and chronic subdural hemorrhages with extra-axial hemorrhages over the cerebral hemispheres, extensive bilateral retinal hemorrhages resulting in an altered level of consciousness, traumatic brain injury, acute respiratory failure, traumatic cerebral edema and subdural hematoma. He was found to have fractures to his left posterior seventh and eighth ribs and fractures of the lateral fourth, fifth and sixth ribs with adjacent pleural thickening; bruising to his lungs; and bleeding to his spine. The injuries were in different stages of healing. The parents had no explanation for how D.J. sustained the injuries, which were consistent with inflicted trauma and were of such a nature that would ordinarily not be sustained

---

[1]     Further statutory references are to this code.

except as the result of deliberate unreasonable neglectful acts of the mother and father who had care, custody and control of the minor.

D.J. was declared a dependent of the juvenile court in May 2013, when he was nine months old. At the jurisdiction hearing, the court sustained the petition under section 300, subdivisions (a), (b) and (e), finding that "[t]he deliberate unreasonable neglectful acts of the parents endangers the child's physical health and safety and places the child at risk of physical harm, damage, danger, and death;" with respect to the subdivision (e) allegation, the court found that the parents knew or reasonably should have known that D.J. was being physically abused and failed to take action to protect him. The court dismissed an allegation under subdivision (b) that the parents had failed to obtain timely medical care for the child. At disposition, the court ordered reunifications services for mother and father. Upon his release from the hospital, D.J. was placed in the care of his maternal great-aunt, Tanya G.

On June 3, 2014, the juvenile court ordered that, subject to Tanya G.'s agreement, mother could have overnight visits in the caretaker's home. All other visits were to be monitored.

On August 13, 2014, this court reversed the dismissal of the count regarding the parents' failure to obtain medical care, as well as the juvenile court's order that reunification services be provided to the parents.

Between the time of the disposition hearing and the juvenile court's denial of mother's section 388 petition, the Department reported on the status of the case, as follows: D.J. continued in his placement in the home of his maternal great-aunt Tanya G. Parents had monitored visits with the child, during which they held him and talked with him. Mother received "Wraparound" services, including individual counseling, psychiatric services and anger management treatment.

In August 2013, mother engaged in a physical altercation with her sister in Tanya G.'s home. Father then came to the home with additional unknown males and

3

engaged in a physical altercation with mother's brother-in-law while D.J. and other children were present in the home. Parents took no responsibility for their actions.

On September 10, 2014, the Department filed a section 300 petition regarding the minor's newborn sibling. Father was deemed the presumed father of the sibling, who was temporarily detained by the juvenile court.

On November 10, 2014, mother filed a section 388 petition asking that D.J. be placed with her and that DCFS provide her with family maintenance services or, in the alternative, that mother be allowed to move in with Tanya G. and that the court order the Department to develop a plan to transition D.J. to mother's care. In her section 388 petition, mother alleged that she visited D.J. on a consistent basis, including frequent visits of two or more hours as well as overnight visits in the home of Tanya G.; she completed a standard parenting class and a 26-hour class for parents of children with special needs; she completed training covering CPR, use of the g-tube for feeding, and other medical issues; she assumed a parental role in caring for D.J. by, among other things, attending his doctor's appointments and feeding, changing, and putting him to bed. Mother alleged that the bond between herself and her son had strengthened over the pendency of the action, and asserted that "[i]t is best for children to be with parents, so long as they are appropriate, and [mother] has demonstrated that she is now an appropriate parent."

On November 14, 2014, the juvenile court summarily denied mother's section 388 petition without a hearing. Mother timely appealed that order.

DISCUSSION

A parent may petition the juvenile court for a hearing seeking to change, modify, or set aside any of the court's previous orders on the grounds of a "change of circumstance or new evidence." (§ 388, subd. (a)(1).) "If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held and shall give prior notice. . . ." (§ 388, subd. (d).) To

4

succeed on a section 388 petition, a parent must establish by "a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)

As our Supreme Court stated in *In re Jasmon O.* (1994) 8 Cal.4th 398, 415: "The petition for modification must contain a 'concise statement of any change of circumstance or new evidence that requires changing the [previous] order.' (Cal. Rules of Court, rule 1432(a)(6).) The petition must be liberally construed in favor of its sufficiency. (*Id.*, rule 1432(a); see also *In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) As one court has explained, 'if the petition presents any evidence that a hearing would promote the best interests of the child, the court will order the hearing.' (*In re Heather P.* (1989) 209 Cal.App.3d 886, 891.)" However, the court has discretion to deny the petition without a hearing if the petition fails to make a prima facie showing of evidence which, if accepted as true, would be sufficient to sustain an order granting the petition. (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912.) Additionally, to avoid a summary denial, it must appear that the best interests of the child may be served by a change in the order. (*Ibid.*)

"When a juvenile court bypasses reunification services due to a finding that a child suffered 'severe physical abuse' (§ 300, subd. (e)), the focus of the dependency proceedings turns to the child's need for permanence and stability instead of family reunification. (*In re A.M.* [(2013)] 217 Cal.App.4th [1067,] 1074-1075.) Once severe abuse has been found, a court is '*prohibited* from granting reunification services "unless it finds that, based on competent testimony, those services are likely to prevent reabuse . . . or that failure to try reunification will be detrimental to the child because the child is closely and positively attached to that parent."' (*In re A.M., supra,* 217 Cal.App.4th at pp. 1074-1075, quoting § 361.5, subd. (c).) Stated another way, in the 'comparatively extreme situation[ ]' when a child is the victim of severe abuse, the legislative presumption is that services are not to be provided to the parent. (*In re A.M.,*

5

at p. 1074.) When this presumption applies, the evidentiary burden is heightened at any hearing to consider a section 388 petition requesting reunification services. In such a case, a juvenile court may modify an order denying reunification services only if there is clear and convincing evidence that the services would be in the child's best interests, and only if it makes the same findings that would have been required to offer services at the disposition hearing instead of bypassing services. (§§ 361.5, subd. (b)(5), 388, subd. (a)(2); rule 5.570(h)(1)(B); *In re A.M.,* at pp. 1075-1077.)" (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157-1158.)

A juvenile court's summary denial of a section 388 petition is reviewed for an abuse of discretion. (*In re Mary G.* (2007) 151 Cal.App.4th 184, 205; *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.) "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 319, quoting *Walker v. Superior Court* (1991) 53 Cal.3d 257, 272.)

Mother argues that her section 388 petition alleged evidence to support a change of circumstance, and that the modified order would serve D.J.'s best interests. Consequently, she maintains that, pursuant to section 388, subdivision (d), the juvenile court was required to hold a hearing. We see no abuse of discretion.

In this case, this court reversed the juvenile court's order granting mother reunification services, explaining that the evidence was insufficient to support a finding that providing reunification services would prevent re-abuse or that the failure to attempt reunification would be detrimental to the child. We also held that the evidence was insufficient to support a finding that reunification was in the best interest of the child. (*DCFS v. B.K., supra,* B251615, [nonpub. opin.].) The evidence which this court determined to be insufficient included the following: (1) mother and D.J. appeared to be bonded; (2) D.J. appeared to recognize mother and cried when she left him; (3) mother regularly visited the child; (4) those who knew mother were of the opinion that she would

never do anything to harm D.J.; (5) mother was very protective of the child and was determined that he not end up institutionalized; (6) mother took steps to become a better parent, including completing a parenting class; (7) mother performed tasks associated with the child's ongoing medical care during her monitored visits; and (8) mother was a "non-emancipated minor" at the time of the abuse. (*DCFS v. B.K., supra,* B251615, [nonpub. opin.].)  This is essentially the same evidence mother's counsel presented in her section 388 petition.  We cannot agree with mother that her continuing visits with D.J. and her reported participation in some additional training constituted a change in circumstances which, if proved, would support a modification of the juvenile court's order.

Among the "new information" referenced in the section 388 petition is the statement that mother "graduated from Wraparound, which included individual counseling."  However, the petition includes no documentation to support this assertion, much less evidence to establish that mother had successfully addressed in counseling the very serious and severe abuse that left her infant son severely and permanently disabled.  Mere conclusory assertions unsupported by evidence are not sufficient to invoke a petitioner's right to a hearing.  (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250-251 [a mother's assertions in her section 388 petition were merely conclusory and entirely unsubstantiated by even a declaration].)  The same holds true for the petition's inclusion as new information the statements that "mother is no longer in a relationship with the child's father," and that mother maintained "consistent and meaningful visitation, including overnights in the home of the caretaker."  The former assertion was unsupported by a declaration, while the latter was contradicted by the visitation log attached to the petition, which documented the type and length of mother's visits with D.J. but included no record of any overnight visits.

Moreover, even assuming arguendo that mother had documented a change in circumstance, she failed to establish that granting her section 388 petition would promote the child's best interests.

7

As noted above, the juvenile court's adjudication of the dependency petition based on a finding of severe physical abuse pursuant to section 300, subdivision (e) "shall constitute prima facie evidence that the minor cannot be safely left in the physical custody of the parent or guardian with whom the minor resided at the time of injury." (§ 361, subd. (c)(1).) Consequently, mother had a heightened evidentiary burden to establish that modification of the order would be in the child's best interests. (*In re G.B., supra,* 227 Cal.App.4th at pp. 1157-1158.) As we explained when reversing the juvenile court's order granting the parents reunification services, the evidence, including that D.J. appeared to be bonded to mother to some extent, mother participated in services, and mother regularly visited with the child, was not sufficient to establish that reunification was in the child's best interest. (*DCFS v. B.K., supra,* B251615, [nonpub. opin.].)

In sum, mother's counsel failed to make a prima facie showing of a change in her circumstances, or that granting the section 388 petition would promote the child's best interests. D.J. had been placed with Tanya G. for approximately 21 months, the majority of his young life, and all of his special needs were being met. It was clearly in the child's best interests to remain in this home.

DISPOSITION

The juvenile court's order is affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIRSCHNER, J.*


We concur:


MOSK, Acting P.J.


KRIEGLER, J.

---

*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.